J-A07033-23

## 2023 PA SUPER 62

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW SINKIEWICZ | : | No. 480 EDA 2022 |

Appeal from the Order Entered December 8, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0020631-2020,
MC-51-CR-0020632-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW SINKIEWICZ | : | No. 481 EDA 2022 |

Appeal from the Order Entered December 8, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0020631-2020,
MC-51-CR-0020632-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McCAFFERY, J.: **FILED APRIL 5, 2023**

In these consolidated appeals,[1] the Commonwealth appeals from the orders entered in the Philadelphia County Court of Common Pleas denying its motions to refile aggravated assault charges against Matthew Sinkiewicz

_____

[1] This Court consolidated these appeals *sua sponte*. **See** Order, 5/17/22.

(Appellee), a former sergeant with the Southeastern Pennsylvania Transportation Authority (SEPTA) police force, in two cases involving his assault of two protestors. On appeal, the Commonwealth contends it presented *prima facie* evidence that Appellee attempted to cause serious bodily injury to the victims and caused bodily injury to the victims with a deadly weapon to support two counts of aggravated assault at each docket. *See* 18 Pa.C.S. § 2702(a)(1), (4). For the reasons below, we affirm.

The charges against Appellee arose as a result of his actions during a May 30, 2020, Black Lives Matter protest outside of Philadelphia's Municipal Services Building (MSB). At that time, Appellee was uniformed and on-duty, assisting other officers in keeping the protestors at bay. While attempting to push protestors back from the MSB, Appellee struck two protestors — Hannah Bachism and Joseph Rupprecht — with his department-issued baton. At two separate dockets, he was charged with two counts of aggravated assault under Subsections 2702(a)(1) and (a)(4), and one count each of possessing an instrument of crime, simple assault, recklessly endangering another person (REAP), unsworn falsification to authorities, and official oppression.[2] *See* Trial Ct. Dockets MC-51-CR-0020631-2020 (Rupprecht); MC-51-CR-0020632-2020 (Bachism).

The cases proceeded to a bifurcated preliminary hearing conducted before Philadelphia Municipal Court Judge Wendy L. Pew on September 22,

_____

[2] *See* 18 Pa.C.S. 907, 2701, 2705, 4904, and 5301, respectively.

- 2 -

2021, and November 3, 2021. The following evidence was presented by the Commonwealth.

By late afternoon on May 30, 2020, approximately 1,000 to 2,000 protestors had gathered in front of the MSB, and were starting to "rush" the building. *See* N.T., 11/3/21, at 48. Both police body cam footage and aerial footage from a local news station of the incidents at issue was presented at the preliminary hearings. As noted *supra*, Appellee was a SEPTA police sergeant; he was uniformed and on-duty at all relevant times. Just prior to the incidents, the officers were supplied with protective shields, and ordered to "push people back." *See id.* at 48, 68.

Hannah Bachism testified that at approximately 4:50 p.m., Appellee pushed her with his shield, then moved it away and struck her "over the back of [her] head and on [her] arm" with his metal baton. *See* N.T., 9/22/21 at 7, 9. She stated that she immediately backed away and began "running down the steps" at which time she tripped and lost a shoe. *Id.* at 9. Bachism testified she went to the hospital where the staff "used glue that was safe for your skin to close the [head] wound." *Id.* She stated she had a permanent scar, and experienced tingling on the back of her head for seven to eight months following the injury. *Id.* at 9-10. Bachism identified herself in photographs from the protest and narrated the body cam and aerial footage of the incident presented by the Commonwealth. *See id.* at 10-19.

Under cross-examination, Bachism acknowledged that she did touch Appellee before he struck her with his baton but did not remember the

"specifics." *See* N.T., 9/22/21, at 26, 29-30. She recalled only that after she was "hit with his shield[,]" she instinctively raised her arms to push back. *Id.* at 26-27. Appellee then presented Bachism with a still photograph of the incident, after which she admitted showed her pushing against Appellee's arm. *See id.* at 34-36. Under redirect, Bachism agreed the "whole interaction" took place "within 5 to 10 seconds." *Id.* at 60.

Joseph Rupprecht testified that he was also one of the protestors in front of the MSB on May 30, 2020. N.T., 11/3/21, at 5-6. He claimed that the police "charged" the protestors, who were unable to "run away[, a]nd eventually [Appellee] struck [him] over the head with the baton." *Id.* at 6. Rupprecht identified himself in still photographs and the aerial footage; he was wearing blue gloves at the time. *See id.* at 7-9, 23-24. He acknowledged it was "very chaotic" in the "ten minutes or so before [he] was struck[.]" *Id.* at 16. Rupprecht testified that officers "came into [his] space and were attacking" him so he had his "hands up in defense" and some officers "may have made contact with [his] hands." *Id.* While the aerial footage showed his arm outstretched in Appellee's direction immediately before he was struck, Rupprecht claimed he was attempting to "prevent and defend against the batons and shield and barricades that were being swung at [him] and the people around [him]." *Id.* at 24. Rupprecht testified that after Appellee struck him in the head with his metal baton, he was taken to the emergency room where he received ten staples and was diagnosed with a concussion.

*Id.* at 12. He claimed he experienced pain at the site for weeks, and was unable to work at his six-hour per week job for two weeks. *Id.* at 12-14.

The Commonwealth also presented the testimony of SEPTA Police Lieutenant Mark Pasquarella, who investigated Appellee's actions during the protest response. *See* N.T., 11/3/21, at 44-45. As part of the investigation, Lieutenant Pasquarella reviewed the Response to Resistance Report, which was completed by Appellee after the incident. *See id.* at 46-48. In his report, Appellee stated the protestors "refused numerous commands to back up[,]" and were "physically resisting" the officers as they pushed them back with their shields. *See id.* at 48. Appellee acknowledged he then "used [his] baton to get [protestors] to move back." *Id.* Lieutenant Pasquarella testified that he reviewed the body cam and aerial footage of the incident and observed Appellee strike four protestors in their heads with his baton. *See id.* at 53-54. He also acknowledged, however, that there appeared to be 1,000 to 2,000 people present at the scene, the police had requested further assistance, and there were multiple objects (pipes, glass, strollers) being thrown at police from the crowd. *Id.* at 62-63. Lieutenant Pasquarella confirmed Appellee's claim that the officers were ordered to "push the people back[.]" *Id.* at 68.

Lastly, the Commonwealth entered into evidence SEPTA's "response to resistance directive." *See* N.T., 11/3/21, at 79-81. The parties stipulated

that the document was "the protocol that is in place for response to resistance that [Appellee] would have been trained in and subject to."[3]  *Id.* at 87-88.

At the conclusion of the November 3rd hearing, the trial court discharged the felony aggravated assault charges for lack of evidence, but held the remaining misdemeanor charges for trial.  *See* N.T., 11/3/21, at 104. Five days later, on November 8, 2021, the Commonwealth filed a notice of its intent to refile the criminal complaint — including the felony aggravated assault charges — at each docket.  *See* Notices of Refiling of Criminal Complaint, 11/8/21.

A refile hearing was conducted on December 8, 2021, before Philadelphia Common Pleas Court Judge Crystal Bryant-Powell.[4]  The

---

[3] The document is not included in the certified record on appeal.  Nevertheless, the Commonwealth included it in its reproduced record, and Appellee does not contest its authenticity.  *See* Commonwealth's Brief at R.R. 86a-95a; Appellee's Brief at 9 n.4, 17.  For its purposes, the Commonwealth refers to the specific directives regarding the use of a police baton.  *See* Commonwealth's Brief at 19, 21, R.R. 93-94.  The directives provide that "[i]ntentionally striking areas which could potentially cause death or serious physical harm, include the head . . . is prohibited unless the use of deadly force is justified."  *Id.* at R.R. 93-94.

[4] Pennsylvania Rule of Criminal Procedure 544(A) permits the Commonwealth to refile charges dismissed at a preliminary hearing with the "issuing authority who dismissed . . . the charges."  Pa.R.Crim.P. 544(A).  It further allows the Commonwealth to file a motion requesting "a different issuing authority to conduct the preliminary hearing."  *See* Pa.R.Crim.P. 544(B).  Although the refile hearing in the present case was conducted before a common pleas court judge — not the same municipal court judge who originally dismissed the aggravated assault charges — there is no indication in the record that the Commonwealth requested a different issuing authority.  Nevertheless, neither
*(Footnote Continued Next Page)*

Commonwealth "elected not to present additional live testimony but [moved] into evidence the notes of testimony from the preliminary hearings of September 22, 2021, and November 3, 2021, two videos collectively that were shown at the bifurcated preliminary hearings, and photographs that were also shown at the bifurcated preliminary hearings." Trial Ct. Op., 4/18/22, at 2. It also attempted to move into evidence the SEPTA response to resistance directives that were admitted at the November 3rd hearing. *See* N.T., 12/8/21, at 27-28. However, the court sustained Appellee's objection to the document, finding it was "irrelevant." *Id.* at 28. At the conclusion of the hearing, the trial court denied the motion to refile at both dockets. *See id.* at 34.

On December 20, 2021, the Commonwealth filed two notices of appeal,[5] one at each docket, asserting that the orders denying its motions to refile

_____

party has objected to the procedure. *See Commonwealth v. Montgomery*, 192 A.3d 1198, 1199 n.2 (Pa. Super. 2018).

[5] It merits mention that although the Commonwealth listed both municipal court docket numbers on the notices of appeal, it properly filed a separate notice of appeal at each docket. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (Pa.R.A.P. 341, which requires separate notice of appeal for each lower court docket, was satisfied when appellant filed four separate notices of appeal, although each notice listed all four docket numbers; appellate rules do not "expressly forbid" inclusion of multiple docket numbers on notices of appeal). We emphasize, however, that the better practice is to list one lower court docket number on each notice of appeal.

"terminate[d] or substantially handicap[ped] the prosecution[s]."[6] *See*

Commonwealth's Notices of Appeal, 12/20/21; Pa.R.A.P. 311(d)

(Commonwealth may take an appeal in a criminal case "from an order that

does not end the entire case where the Commonwealth certifies in the notice

of appeal that the order will terminate or substantially handicap the

prosecution.").

The Commonwealth presents one issue for our review:

Did the lower court err in ruling that the evidence was insufficient to establish a *prima facie* case that [Appellee] committed the aggravated assault charges, where the evidence, properly viewed in the light most favorable to the Commonwealth, established that [Appellee] intentionally struck each of the victims in the head with a metal baton?

Commonwealth's Brief at 4.

Our review of an order quashing a criminal charge is guided by the

following:

[T]he evidentiary sufficiency of the Commonwealth's *prima facie* case is a question of law to which this Court's review is plenary. The trial court is afforded no discretion in deciding whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its burden to make out the elements of a charged crime.

As our Supreme Court has explained:

[a]t the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt

_____

[6] We note that, at each docket, the Commonwealth complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

beyond a reasonable court, but rather, must merely put forth sufficient evidence to establish a *prima facie* case of guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.

Weight and credibility of evidence are not factors at the preliminary hearing stage. All evidence must be read in the light most favorable to the Commonwealth, and inferences reasonably drawn therefrom which would support a verdict of guilty are to be given effect. Courts must employ a "more-likely-than-not" test to assess the reasonableness of inferences relied upon. Anything less amounts only to suspicion or conjecture. Our Supreme Court recently reminded that the *prima facie* showing is a low threshold for the Commonwealth to surpass.

*Commonwealth v. Munson*, 261 A.3d 530, 540 (Pa. Super. 2021) (citations omitted).

In the present case, the Commonwealth argues the trial court erroneously denied its motions to refile the aggravated assault charges against Appellee. It insists it presented a *prima facie* case against Appellee under both Subsections 2702(a)(1) and (a)(4) of the aggravated assault statute at each docket. With regard to subsection (a)(1), the Commonwealth maintains it presented a *prima facie* case that Appellee **attempted** to cause serious bodily injury to the victims "when he swung his metal baton at their heads." Commonwealth's Brief at 20. With regard to subsection (a)(4), the Commonwealth contends it established that Appellee used his department-issued baton as a deadly weapon, and attempted to cause and, in fact, did cause bodily injury to both Bachism and Rupprecht. ***See*** Commonwealth's

Brief at 17-19. Related to both claims, the Commonwealth also insists that the trial court, at the refile hearing, "contravened [its] standard of review" — and considered a "diminished record" — when it refused "to admit SEPTA's response-to-resistance directive, which had been admitted at the preliminary hearing through a stipulation." *Id.* at 16 (quotation marks omitted). It maintains the directive, which Appellee was "'trained in and subject to[,]' . . . explicitly prohibits officers from striking suspects in the head with a baton unless 'deadly force' is justified because doing so could 'potentially cause death or serious bodily injury.'" *Id.* at 21 (citations omitted). Accordingly, the Commonwealth requests that we reverse the trial court's orders denying its motions to refile the charges and remand both cases for trial.

As noted above, the Commonwealth seeks to pursue aggravated assault charges against Appellee under Subsections 2702(a)(1) and (a)(4) of the Crimes Code, which provide, in relevant part:

> A person is guilty of aggravated assault if he:
>
> (1) **attempts to cause serious bodily injury to another**, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or]
>
>           \*     \*     \*
>
> (4) attempts to cause or intentionally or knowingly causes **bodily injury** to another with a **deadly weapon**[.] . . .

18 Pa.C.S. § 2702(a)(1), (4) (emphasis added).

"Bodily injury" is defined as the "[i]mpairment of physical condition or substantial pain[,]" while "[s]erious bodily injury" is that which "creates a

- 10 -

substantial risk of death or . . . causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.  Although the Commonwealth argued in the trial court that both victims suffered **serious bodily injury**, it has abandoned that assertion on appeal.  However, there appears to be no dispute that both Bachism and Rupprecht suffered "bodily injury" as defined in Section 2301.

Thus, under subsection (a)(1), assuming neither victim suffered serious bodily injury, the Commonwealth must establish that Appellee **attempted** to cause serious bodily injury.  ***See*** 18 Pa.C.S. § 2702(a)(1).  "[A]n 'attempt' is found where the accused, with the required **specific intent**, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another."  ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa. Super. 2012) (citation omitted & emphasis added).

> A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]  As intent is a subjective frame of mind, it is of necessity difficult of direct proof.  The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

***Id.*** (citations & quotation marks omitted).  When considering whether a defendant acted with specific intent to cause serious bodily injury if such injury does not occur, our Supreme Court has considered the following circumstances:  whether the defendant is "disproportionally larger or stronger than the victim;" whether the defendant had to be "restrained from escalating his attack upon the victim;" whether the defendant had a "weapon or other

- 11 -

implement to aid his attack;" and whether the defendant made any statements "which might indicate his intent to inflict further injury upon the victim." ***Commonwealth v. Alexander***, 383 A.2d 887, 889 (Pa. 1978).

With regard to Section 2702(a)(4), the Commonwealth must establish Appellee attempted to cause or, in fact, did cause bodily injury with a "deadly weapon." ***See*** 18 Pa.C.S. § 2702(a)(4). The Crimes Code defines a deadly weapon as:

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, **or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury**.

18 Pa.C.S. § 2301 (emphasis added). Thus:

> Although deadly weapons are commonly items which one would traditionally think of as dangerous (*e.g.,* guns, knives, etc.), there are instances when items which normally are not considered to be weapons can take on deadly status. ***See e.g., Commonwealth v. Prenni***, 55 A.2d 532 (Pa. 1947) (broom handle); ***Commonwealth v. Cornish***, 589 A.2d 718 (Pa. Super. 1991) (fireplace poker); ***Commonwealth v. Brown***, 587 A.2d 6 (Pa. Super. 1991) (dry-wall saw). The definition of deadly weapon does not demand that the person in control of the object intended to injure or kill the victim. **Instead, it gives objects deadly weapon status on the basis of their use under the circumstances.** . . .

***Commonwealth v. Scullin***, 607 A.2d 750, 753 (Pa. Super. 1992) (some citations omitted & emphasis added).

Considering first Appellee's culpability under Subsection (a)(1), the trial court found the Commonwealth failed to establish a *prima facie* case that that

- 12 -

Appellee "acted with the **specific intent** to cause serious bodily injury" to Bachism and Rupprecht. Trial Ct. Op. at 10, 11 (emphasis added). The court summarized the attendant circumstances surrounding both assaults as follows:

> Appellee was among a group of police officers who began to use their police shields to push protestors back (away) from the steps of the [MSB], and pursuant to that course of action, . . . Appellee pushed his shield against a protestor who was standing next to Ms. Bachism. Ms. Bachism immediately began to use both of her hands to push back against the shield and in doing so, her hand made contact with . . . Appellee[']s arm. At that precise moment, . . . Appellee struck Ms. Bachism once on her head and once on her arm with a baton.
>
> The sequence of actions between Ms. Bachism and . . . Appellee occurred in a time frame of a few seconds, and . . . Appellee did not attempt to strike Ms. Bachism again with the baton after his initial actions.
>
> \* \* \*
>
> Mr. [Rupprecht] stated that "there was a line of police amassing, one of who was . . . Appellee. Eventually the police started charging the protestors and attacking us . . . the police were swinging batons and shields and barricades at the protestors . . . And eventually [Appellee] struck me over the head with the baton."
>
> When asked whether he did anything physically toward . . . Appellee at any point, Mr. Rupp[recht] stated "not toward [Appellee, but] I did reach my hand out to prevent attacks against other protestors.[']
>
> Like [Ms.] Bachism, the sequence of actions between Mr. Rupprecht and . . . Appellee occurred when . . . Appellee was among a group of police officers who began to use their police shields to push protestors back (away) from the steps of the [MSB]. Mr. Rupprecht described this occurrence as very chaotic. Notably, Mr. Rupprecht does not state that . . . Appellee struck him more than once.

- 13 -

Trial Ct. Op. at 9-11 (record citations & some quotation marks omitted).

Preliminarily, we note Appellee insists the Commonwealth waived the argument that he possessed the **specific intent** to cause serious bodily injury to the victims, because, in the trial court, it argued only that the victims did, in fact, suffer serious bodily injury. *See* Appellee's Brief at 11-14. Indeed, "[w]hen a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." *Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010) (*en banc*). We agree that, during the December 8, 2021, refile hearing, the Commonwealth focused on its claim that "for the purposes of the F1 aggravated assault [under Subsection 2702(a)(1),] serious bodily injury did occur[.]" *See* N.T., 12/8/21, at 25. Moreover, it argued that if the court did not agree the victims' injuries were "serious enough for F1[,]" then it could determine that Appellee committed aggravated assault under Subsection (a)(4) because he "at least caused bodily injury with a deadly weapon[.]" *Id.* Nevertheless, during the earlier November 3rd preliminary hearing, the Commonwealth argued that Appellee's actions in hitting other protestors with his baton, and striking the victims' in their heads, was evidence of his intent. *See id.* at 11/3/21, at 100-01. Further, as detailed above, the trial court addressed this argument in its opinion. Thus, we decline to find the Commonwealth's present claim waived.

In asserting that Appellee demonstrated the requisite specific intent, the Commonwealth focuses on the following: (1) Appellee "swung his metal baton

at [the victims'] heads[;]" (2) Appellee was "noticeably larger than the two victims and the surrounding protestors[;]" (3) the other officers present "did not need to resort to deadly force[;]" (4) Appellee "swung his baton five more times at other, unidentified protestors — two of whom he struck in the head[;]" and (5) Appellee violated SEPTA's response-to-resistance directive, "which explicitly prohibits officers from striking suspects in the head with a baton unless 'deadly force' is justified[.]" Commonwealth's Brief at 20-21. While our standard of review requires us to view the evidence in the light most favorable to the Commonwealth,[7] we are not required to accept the Commonwealth's interpretation of the evidence it presented — particularly when the incident and surrounding circumstances were captured on video.

Upon our review of the testimony, as well as the relevant body cam and aerial footage of the incidents, we agree with the trial court's determination that the evidence presented did not support a *prima facie* case of aggravated assault under Section 2702(a)(1). Even considering the "low threshold" of the "more-likely-than-not" test, we conclude the Commonwealth failed to present sufficient *prima facie* evidence that Appellee acted with the **specific intent** to inflict serious bodily injury on the victims. ***See Munson***, 261 A.3d at 540.

In its review of the circumstances surrounding the assault, the Commonwealth ignores the fact that the incidents at issue took place while

---

[7] ***See Munson***, 261 A.3d at 540.

Appellee and dozens of other police officers were attempting to prevent 1,000 to 2,000 protestors from gaining entry to the MSB. Both the body cam and aerial footage show unidentified items being thrown at the officers. Although it does appear that Appellee was larger than the two victims, he was not involved in a one-on-one attack, where the larger individual would have a significant advantage. Rather, Appellee was in the minority of police officers attempting to subdue a large crowd of protestors. Thus, his size advantage was not relevant. Furthermore, while it does appear Appellee swung his baton more than twice, there was no testimony or footage showing him repeatedly attacking either victim — both of whom admittedly made some contact with, or an aggressive gesture towards, Appellee before he reacted. *See* N.T., 9/22/21, at 26-27 (Bachism pushed back on Appellee's shield before she was hit), 34-36 (photo showed Bachism pushing against Appellee's arm); N.T., 11/3/21, at 24 (aerial footage showed Rupprecht with arm outstretched in Appellee's direction immediately before he was struck).

The circumstances surrounding these assaults — which by all accounts were chaotic — does not establish Appellee possessed the requisite specific intent to cause serious bodily injury to either Bachism or Rupprecht when he struck each victim with his baton. Each strike was momentary and not precipitated by any threats of harm or prior confrontations. *See* ***Commonwealth v. Matthew***, 909 A.2d 1254, 1259 (Pa. 2006) (evidence sufficient to prove defendant attempted to commit aggravated assault; defendant placed loaded gun against victim's throat and threatened to kill him

multiple times before fleeing scene); *Commonwealth v. Fortune*, 68 A.3d 980, 987 (Pa. Super. 2013) (*en banc*) (evidence sufficient to prove defendant attempted to commit aggravated assault; defendant held a gun to victim's forehead during carjacking and threatened her); *Commonwealth v. Lopez*, 654 A.2d 1150, 1155 (Pa. Super. 1995) (evidence supported *prima facie* case of aggravated assault; defendant had specific intent to cause serious bodily injury when he fired eight bullets into empty residence because he had argued with and threatened the owner earlier that day); *Commonwealth v. Rightley*, 617 A.2d 1289, 1295 (Pa. Super. 1992) (evidence sufficient to prove defendant attempted to commit aggravated assault; after fist-fight with victim ended, defendant grabbed aluminum bat and told his girlfriend "no one does this to me and lives," before striking victim twice).

We also reject the Commonwealth's reliance on SEPTA's response-to-resistance directive. At the December 8, 2021, refile hearing, the trial court sustained Appellee's objection to that document, determining it was irrelevant. *See* N.T., 12/8/21, at 27-28. Although the Commonwealth insists the trial court's refusal to consider that document was improper because it had been admitted at the prior November 3rd hearing, the Commonwealth did not challenge that ruling in its Pa.R.A.P. 1925(b) statements. *See* Statements of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B), 1/4/22. Thus, it is waived for purposes of appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.").

Accordingly, we conclude the Commonwealth failed to present a *prima facie* case of aggravated assault under Section 2702(a)(1) as to both victims.

Nevertheless, the Commonwealth also argues it presented *prima facie* evidence to support a charge of aggravated assault under Section 2702(a)(4), which requires proof that the defendant attempted to cause, or did in fact cause, bodily injury to another with a deadly weapon. ***See*** 18 Pa.C.S. § 2702(a)(4). While Appellee does not dispute that the victims suffered bodily injury, he maintains that his department-issued baton was not a deadly weapon as contemplated in the statute. ***See*** Appellee's Brief at 9. The Commonwealth argues, however, that "[a] reasonable fact-finder at trial could easily find the baton was a deadly weapon when used in the matter [Appellee] did to strike the victims." Commonwealth's Brief at 18. Further, it cites several cases in which non-traditional items were considered to be deadly weapons as defined in Section 2301. ***See id.*** at 18-19. Moreover, the Commonwealth emphasizes that "SEPTA itself underscored this in its response-to-resistance directive, which prohibits using the baton to "'[i]ntentionally strik[e] areas which could potentially cause death or serious physical harm, include the head[,] . . . unless the use of deadly force is justified.'" ***Id.*** at 19, *citing* R.R. at 93-94.

As noted above, the Crimes Code provides that an item which is not traditionally viewed as a weapon may be considered a "deadly weapon" when "in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301. Indeed, the

courts of this Commonwealth have determined that, under certain circumstances, a club, a baseball bat, and a tire iron were "deadly weapons" pursuant to Section 2301. *See Commonwealth v. Prenni*, 55 A.2d 532, 532-33 (Pa. 1947) (club, which defendant admittedly used to repeatedly strike victim over the head, killing her, was deadly weapon for purposes of first-degree murder conviction); *Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa. Super. 1997) (baseball bat swung at victim's head during argument was "deadly weapon" for purposes of aggravated assault statute); *Scullin*, 607 A.2d at 753 (tire iron thrown a victim during argument was "deadly weapon" for sentencing enhancement).

Here, however, the trial court found that the Commonwealth did not present evidence "which showed that Appellee used the baton in a manner that constituted a deadly weapon" under the aggravated assault statute. Trial Ct. Op. at 12. We agree. Unlike the decisions cited by the Commonwealth, Appellee did not use the baton to strike the victims during an ongoing dispute, or repeatedly strike them in order to subdue them. Rather, as evident in the body cam and aerial footage, Appellee wielded his department-issued baton to assist him in controlling the chaotic crowd of protestors. Moreover, the victims admitted they resisted Appellee's attempts to push them back with his shield. Under the circumstances presented herein, we conclude the

Commonwealth did not present *prima facie* evidence that Appellee committed aggravated assault under Section 2702(a)(4).[8]

Thus, for the foregoing reasons, we affirm the orders of the trial court denying the Commonwealth's motions to refile criminal charges against Appellee under each criminal docket. Moreover, we remand for trial on the remaining charges.

Orders affirmed. Cases remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/05/2023

---

[8] Again, we refuse to consider the Commonwealth's reliance on the SEPTA document which the trial court precluded at the refile hearing.