J-S39043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAINA LYNN HEDGES | : | No. 640 MDA 2023 |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000319-2022

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED:  DECEMBER 28, 2023**

The Commonwealth appeals from the order entered in the Clinton County Court of Common Pleas, granting the pretrial motion to suppress filed by Daina Lynn Hedges (Appellee).[1]  The Commonwealth contends the suppression court erred or abused its discretion when it:  (1) relied upon a decision that has been overruled by statute; (2) rejected the arresting officer's uncontroverted testimony that reasonable suspicion existed to conduct the vehicle stop; and (3) improperly considered Appellee's explanation for leaving her lane of travel.  For the reasons below, we affirm.

_____

[1] In the notice of appeal, the Commonwealth certified that the order "will terminate or substantially handicap the prosecution." Commonwealth's Notice of Appeal, 4/24/23.  **See** Pa.R.A.P. 311(d) (permitting Commonwealth to file interlocutory appeal in a criminal case "from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").

On April 30, 2022, following a vehicle stop, Appellee was arrested and charged with two counts of driving while operating privileges suspended (DUS), one count of driving under the influence of alcohol (DUI), and the summary offense of driving on roadways laned for traffic.[2]  On March 14, 2023, Appellee filed a pretrial suppression motion challenging the stop of her vehicle.  The suppression court conducted a hearing on April 10, 2023, during which both the arresting officer — Pennsylvania State Trooper Gage Fischer[3] — and Appellee provided the following testimony.

Trooper Fischer testified that, at the time of stop, he had been on the force for more than two years, participated in approximately one to two thousand citations for motor vehicle violations, and conducted approximately 40 DUI stops, with 29 resulting in arrests.  *See* Suppression H'rg at 5, 7, 23. He had received training in the Vehicle Code, detection of DUIs, and advanced roadside impairment driving enforcement.  *See id.* at 6.

On April 30, 2022, at approximately 1:30 a.m., Trooper Fischer was patrolling the area of Bellefonte Avenue in a marked vehicle when he observed a white Ford F-250 truck, operated by Appellee, travelling approximately 10 miles below the posted speed limit of 35 miles per hour.  *See* Suppression

---

[2] *See* 75 Pa.C.S. §§ 1543(b)(1)(iii), (1.1)(iii), 3802(a)(1), and 3309(1), respectively.  This was Appellee's second DUI offense within the past 10 years. *See* Information, 9/6/22, at 1 (unpaginated).

[3] At the time of the incident, Trooper Fischer was a Lock Haven City police officer.  *See* N.T. Suppression H'rg, 4/10/23, at 5.

H'rg at 7-9. As he was driving behind the truck, he noticed Appellee "weaving through the lane designators between the 300 Block through and until the 800 Block of Bellefonte Avenue[.]" *Id.* at 8. Specifically, Trooper Fischer "observed [the truck] cross the yellow center line in the 900 Block of Bellefonte Avenue as well as the 500 Block of High Street."[4] *Id.* at 9. He further stated the truck did not cross the yellow line in a "minor" manner, but rather "it was a large crossing." *Id.* Based on his observations, Trooper Fischer conducted a vehicle stop for two reasons: (1) Appellee violated the summary offense of "roadways laned for traffic[;]" and (2) he suspected Appellee might be texting while driving or driving under the influence. *See id.* at 10. He explained that the time of the stop was "a normal time for individuals driving under the influence of alcohol . . . because the bars close at approximately 2[ a.m.]" *Id.*

Trooper Fischer's patrol vehicle was equipped with a mobile video recorder, which captured the incident. *See* N.T., Suppression H'rg, at 10-11. The Commonwealth played the mobile video recording (MVR) for the suppression court, while Trooper Fischer narrated. *See id.* at 11-15.

Under cross-examination, Trooper Fischer acknowledged that Appellee did not make any "corrective jerking movements" while driving, but instead "smoothly drifted over the left and then smoothly drifted over to the right[.]"

---

[4] The road consisted of three lanes, one in each direction and a center turn lane. *See* N.T., Suppression H'rg at 19, 26.

N.T., Suppression H'rg at 21. He stated that both "jerky driving" and "[d]rifting" are indicators of DUI. *Id.*

Appellee testified that she was driving two drunk friends home when she was stopped by Trooper Fischer. *See* N.T., Suppression H'rg, at 28. She explained that she drifted in the lane to avoid hitting "storm grates" and "manhole covers[, several of which] are deep . . . in the pavement of the road[,]" and would have caused damage to her older vehicle. *Id.* at 28-30. Appellee also stated she "was trying to figure out where [her passengers] were staying" so that she could take them home. *Id.* at 35.

At the conclusion of the hearing, the suppression court took the matter under advisement and directed the parties to file briefs in support of their positions. *See* N.T., Suppression H'rg, at 44. Thereafter, on April 20, 2023, the court filed an order, and accompanying opinion, granting Appellee's suppression motion. *See* Order, 4/20/23. In its findings of fact, the court stated that it viewed the MVR of the incident, and observed the following:

> [Appellee's] vehicle traveled over the yellow line twice, which yellow line separated [Appellee's] vehicle's lane of travel from a center lane that was restricted as a turning lane.
>
> [Appellee's] vehicle's movements over the yellow line were momentary, not erratic, and did not endanger anyone.
>
>             \*      \*      \*
>
> [Appellee's] vehicle's movement within the vehicle's own lane is not found by [the c]ourt "to be weaving within [the vehicle's] lane" as alleged by Trooper Fischer. [Appellee] is not required to drive a vehicle in a straight line, and the deviations observed by [the c]ourt on the MVR are insignificant.

- 4 -

Suppression Ct. Op. & Order, 4/20/23, at 2-3. Moreover, the suppression court determined Appellee's "vehicle speed was appropriate during the nighttime house for traveling in the various commercial areas and residential neighborhoods" and rejected "Trooper Fischer's allegation . . . that driving below the speed limit is an indicator of" DUI. *Id.* at 2. This timely Commonwealth appeal follows.[5]

The Commonwealth purports to raise five claims for our review:

1. Whether the suppression court committed an error of law / abuse of discretion in its reliance upon ***Commonwealth v. Gleason***, . . . 785 A.2d 983 ([Pa.] 2001), which has been specifically overruled by statute, in granting the suppression motion?

2. Whether the suppression court committed an error of law / abuse of discretion in failing to find that the arresting officer had reasonable suspicion to believe that . . . Appellee had committed violations of the Motor Vehicle Code when conducting the motor vehicle stop in this matter?

3. Whether the suppression court committed an error of law / abuse of discretion in rejecting the arresting officer's uncontroverted testimony regarding indicators of [DUI] / texting while driving in its analysis of whether reasonable suspicion / probable cause existed for the motor vehicle stop in this matter?

4. Whether the suppression court committed an error of law / abuse of discretion in mischaracterizing the actions of . . . Appellee as "momentary" vehicle movements over the yellow line that "did not endanger anyone" when the MVR recording clearly showed

---

[5] The Commonwealth complied with the suppression court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The court then filed an opinion pursuant to Pa.R.A.P. 1925(a) on May 4, 2023. ***See*** Suppression Ct. Op. Pursuant to Pennsylvania Rule of Appellant Procedure No. 1925(a), 5/4/23 (Rule 1925(a) Op.), at 1-7. We note Appellee did not file a responsive brief.

multiple significant and extensive instances of . . . Appellee drifting over the yellow line into a turning lane?

5. Whether the suppression court committed an error of law / abuse of discretion in crediting Appellee's testimony in any manner, as the determination of probable cause / reasonable suspicion for a motor vehicle stop is based upon the objective totality of the circumstances from a reasonable law enforcement officer's observations and not . . . Appellee's intentions in leaving her lane of travel?

Commonwealth's Brief at 7-8.

Our review of a suppression order is limited to determining "whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." *Commonwealth v. Cartagena*, 63 A.3d 294, 298 (Pa. Super. 2013) (*en banc*) (citations omitted).

When, as here, the defendant

prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Id.* (citations omitted). Moreover, we note:

It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing. . . .

***Commonwealth v. Bozeman***, 205 A.3d 1264, 1270 (Pa. Super. 2019) (citation omitted).

A police officer's statutory authority for a motor vehicle stop is set forth in Section 6308(b) of the Motor Vehicle Code:

> **(b) Authority of police officer.** — Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

Accordingly, when an officer suspects a driver has committed or is committing a violation of the Motor Vehicle Code, "but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop." ***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015). However, "[i]f it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle." ***Id.*** This Court has provided the following examples:

> Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code

- 7 -

violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Id.*

In order to establish reasonable suspicion to justify a stop, "an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the" Vehicle Code; the standard "is an objective one, based on the totality of the circumstances." ***Commonwealth v. Shaw***, 246 A.3d 879, 883 (Pa. Super. 2021) (citations omitted). "Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Luv***, 735 A.2d 87, 90 (Pa. 1999) (citation omitted). "[A] police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa. Super. 2017).

Thus, in the present case, the Commonwealth was required to demonstrate Trooper Fischer possessed **reasonable suspicion** that Appellee was either committing DUI or texting while driving to justify the stop on either of those bases. However, it was required to establish the trooper had probable cause to justify the stop of Appellee's vehicle on the basis of a violation of Section 3309(1) of the Vehicle Code. ***See Salter***, 121 A.3d at 993.

Turning to the first issue on appeal, the Commonwealth argues the suppression court's ruling should be reversed because the court relied upon

the Supreme Court's decision in **Gleason**, **supra**, "which was overturned by statute nearly [20] years before the present matter[.]" Commonwealth's Brief at 13. It insists any reliance on **Gleason** is "clearly misplaced." **Id.**

In **Gleason**, the Supreme Court, interpreting a **prior version** of 75 Pa.C.S. § 6308(b),[6] "held the statutory standard for stops based on potential Vehicle Code violations was probable cause, even if an investigative stop would be constitutionally permitted in a non-vehicle situation based on reasonable articulable suspicion." **Commonwealth v. Chase**, 960 A.2d 108, 112 (Pa. 2008) (emphases omitted). Following **Gleason**, however, the legislature amended Section 6308(b), which, in its current form permits vehicle stops, depending upon the circumstances, based upon both reasonable suspicion and probable cause. An *en banc* panel of this Court explained:

> Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b) — "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title" — is conceptually equivalent with the underlying purpose of a **Terry** stop. [**See Terry v. Ohio**, 392 U.S. 1 (1968).]
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would

---

[6] In its prior form, Section 6308(b) permitted police officers to stop a vehicle if they had "**articulable and reasonable grounds** to suspect a violation of" the Vehicle Code. 75 Pa.C.S. § 6308(b) (1990, Feb. 2, P.L. 2, No. 2, § 2, effective in 60 days) (emphasis added).

provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (some citations, quotation marks, emphasis, & footnote omitted).

In its Rule 1925(a) opinion, the suppression court explained that it cited ***Gleason*** "for the proposition that a mere instance or two of moving a vehicle beyond the marked lane of travel over a very brief period of time is not sufficient to justify the stop of a vehicle." Rule 1925(a) Op. at 3. The court did not cite ***Gleason*** for the proposition that an officer must possess **probable cause** to conduct a vehicle stop for an investigatory purpose. As the court opined, it "reviewed the facts of this case under both a probable cause standard and a reasonable suspicion standard and concluded that the arresting officer did not possess either reasonable suspicion or probable cause." ***Id.***

Upon our review, we conclude that, under the circumstances, the suppression court's citation of ***Gleason*** was appropriate. First, contrary to the Commonwealth's characterization, the suppression court **did not rely upon the holding** in ***Gleason*** in granting Appellee's suppression motion. Rather, as noted in its Rule 1925(a) opinion, the court cited ***Gleason*** for the sole proposition that Appellee's "mere instance or two of weaving beyond [her] marked lane of travel" for a brief period was insufficient to establish probable case for a stop based upon Section 3309. **See** Rule 1925(a) Op. at 3; Suppression Ct. Op. & Order at 5. **See also** 75 Pa.C.S. § 3309(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall

not be moved from the lane until the driver has first ascertained that the movement can be made with safety.").

Second, the court's reliance on **Gleason** for this singular purpose was proper. The **Gleason** Court held that an officer's observation of a vehicle crossing over a "the berm line by six to eight inches on two occasions for a period of a second or two over a distance of approximately one quarter of a mile" absent any evidence that the driving "created a safety hazard" was insufficient to establish probable cause justifying a stop for a violation of Section 3309(1). **See Gleason**, 785 A.2d at 983, 989. Thus, the suppression court did not err when it cited **Gleason** in its opinion, and the Commonwealth's first issue fails.

The Commonwealth addresses its next three issues together. **See** Commonwealth's Brief at 13-14. It insists the suppression court erred when it determined Trooper Fischer did not possess reasonable suspicion to conduct a vehicle stop of Appellee based upon his suspicion that she was either driving under the influence or texting while driving.[7] **See id.** at 14. The Commonwealth argues the court "blindly rejected" Trooper Fischer's "uncontroverted" testimony that the following factors provided him with the requisite reasonable suspicion: (1) the incident took place at 1:28 a.m.; (2) the vehicle was traveling 25 miles per hour in a 35 mile per hour zone; (3)

_____

[7] **See** 75 Pa.C.S. § 3316(a) (prohibiting a driver from operating a vehicle "while using an interactive wireless communication device to send, read or write a text-based communication while the vehicle is in motion").

the vehicle was "drifting . . . from its lane of travel over a solid yellow line into a designated turning lane multiple times;" and (4) the vehicle was "weaving . . . within its lane of travel." *Id.* at 14-15. It maintains the suppression court failed to consider the trooper's "training and experience in DUI detection, . . . and inserted its own reasoning" for concluding reasonable suspicion was lacking. *Id.* at 15 (footnote omitted).

Here, the suppression court concluded "[t]he totality of the circumstances . . . did not support a reasonable suspicion that [Appellee] was . . . texting while driving or driving under the influence[.]" Suppression Ct. Op. & Order at 7. The court reviewed the MVR of the incident and determined that Appellee's movements within her own lane — which Trooper Fischer described as weaving — were "insignificant" and that she only deviated from her lane on two occasions. *See id.* at 6. In fact, the court noted Appellee "only crossed the line marking [her] lane of travel twice over a considerable distance" and the lane she crossed into was a center turn lane in which no other vehicles were traveling. *Id.* at 5. Moreover, the suppression court found Appellee's speed was "appropriate" for the time and area in which she was traveling. *See id.* at 2. While our standard of review requires us to consider the Commonwealth's evidence to the extent it "remains uncontradicted when read in the context of the record as a whole[,]"[8] neither this Court, nor the suppression court, are obligated to "accept the

---

[8] *See Cartagena*, 63 A.3d at 298.

Commonwealth's interpretation of the evidence it presented — particularly when the incident and surrounding circumstances were captured on video." ***See Commonwealth v. Sinkiewicz***, 293 A.3d 681, 690 (Pa. Super. 2023).

With regard to Trooper Fischer's experience in detecting DUI, the court questioned the trooper's testimony that **both** "drifting into another lane of travel [**and**] jerking the vehicle into another lane of travel are . . . indicators of driving under the influence or texting while driving." ***See*** Rule 1925(a) Op. at 4 (emphasis added). The suppression court explained that it was not required to "just accept the officer's unsupported testimony of what is or is not an indicator [of DUI or driving while texting] without the Commonwealth laying some foundation that the officer's training included those principles."[9] ***Id.***

Here, as mentioned above, the suppression court viewed the MVR of the incident, and it simply disagreed with the trooper's characterization of Appellee's driving. The court was not required to accept the trooper's

_____

[9] We note that Trooper Fischer explained drifting within a lane may indicate an impaired driver because "[a]lcohol is a central nervous system suppressant[,]" which causes the muscles to "become more relaxed" so that the driver is "not in full control of [the] vehicle." N.T., Suppression H'rg, at 21. However, it appears the court discredited the trooper's testimony because he stated that **both** drifting into another lane and jerking into another lane could be signs of impaired driving — so that any brief movement in or out of a lane could support a vehicle stop.

testimony, and we detect no error or abuse of discretion based upon its failure to do so.[10] *See Bozeman*, 205 A.3d at 1270.

In its final claim, the Commonwealth contends the suppression court erred or abused its discretion when it considered Appellee's testimony regarding the reasons for her "erratic driving," including the fact that "she moved to avoid manhole covers that could potentially damage her large pick-up truck." Commonwealth's Brief at 17. It maintains the court "outright reject[ed]" Trooper Fischer's "uncontroverted testimony" that "his training and experience dictated that DUIs are more frequent during the hours prior to bars closing[.]" *Id.* The Commonwealth asserts that Appellee's stated reason for leaving her lane "does not and should not fall into a court's consideration of whether reasonable suspicion existed." *Id.* at 18. Indeed, the Commonwealth concludes Trooper Fischer "fully provided specific and articulable facts which led him to reasonably suspect a violation of the Motor

_____

[10] We note that while the Commonwealth's fourth issue, as framed in its statement of questions, challenges the suppression court's determination that Trooper Fischer had no **probable cause** to stop Appellee for a violation of Section 3309(1), the Commonwealth does not elaborate on this issue in the argument section of its brief. *See* Commonwealth's Brief at 7. Therefore, this claim is waived for our review. *See* Pa.R.A.P. 2119(a) (argument must include discussion and citation of pertinent authorities). Moreover, we note that Section 3309(1) does not preclude a driver from leaving her lane of travel if she "first ascertain[s] that the movement can be made with safety." 75 Pa.C.S. § 3309(1). Here, after viewing the MVR, the suppression court found that "there was no other traffic in the turning lane . . . and [Appellee's] entrance into the turning lane was momentary at best." *See* Rule 1925(a) Op. at 5.

Vehicle Code, providing him reasonable suspicion to conduct a motor vehicle stop of" Appellee. **_Id._**

As explained **_supra_**, the suppression court found the Commonwealth did **not** demonstrate Trooper Fischer had reasonable suspicion to suspect Appellee was driving while intoxicated or texting. **_See_** Suppression Ct. Op. & Order at 6-7. Upon viewing the MVR, the court observed Appellee was not operating her vehicle in a "dangerous fashion" and only left her lane two times during the long period the trooper followed her. **_See id._** at 6. The court further described Appellee's movements within her lane as "insignificant." **_See id._** It concluded: "There are no specific or articulable facts that would lead this [c]ourt to conclude that reasonable suspicion existed that [Appellee] was operating [her] vehicle under the influence or texting while driving, nor is this [c]ourt able to determine that a particularized and objective basis existed for suspecting that [Appellee] was operating this vehicle under the influence or texting while driving." **_Id._** at 6-7. Furthermore, in its Rule 1925(a) opinion, the suppression court clarified that it did not accept Appellee's testimony concerning her reasons for leaving her lane as true and did not rely upon her testimony in reaching its decision. **_See_** Rule 1925(a) Op. at 6.

We detect no error or abuse of discretion in the suppression court's ruling. The Commonwealth appears to suggest that the court was required to accept the trooper's testimony concerning Appellee's driving and his reasons for the stop because "Pennsylvania law demands that '[r]easonable suspicion

. . . must be viewed [from] the standpoint of an objectively reasonable police officer." Commonwealth's Brief at 17 (citations omitted). However, we reiterate that the suppression court has the sole discretion to "pass on the credibility of the witnesses and the weight to be given their testimony" and "is free to believe all, some of none of the evidence presented[.]" *Bozeman*, 205 A.3d 1270. Here, the court simply did not credit the officer's "suspicion" based upon its own viewing of the MVR. Thus, no relief is warranted.

Order affirmed.

Judge Dubow joins the memorandum.

Judges McLaughlin notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/28/2023