J-S15038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY L. WALKER | : | |
| | : | |
| Appellant | : | No. 3337 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004155-2022

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 23, 2026**

Appellant Terry L. Walker appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after Appellant was convicted of Aggravated Assault, Unlawful Restraint, Endangering the Welfare of Children (EWOC), Simple Assault, and Recklessly Endangering Another Person (REAP). Appellant claims there was insufficient evidence to support his convictions and argues that the trial court erred in rejecting his corporal punishment defense. Appellant also claims the trial court abused its discretion in imposing an unreasonable sentence. We affirm the judgment of sentence, but remand for the correction of a clerical error in the sentencing order.

Appellant was charged with the aforementioned offenses in connection with a physical altercation he had with his fourteen-year-old daughter, A.W.

_____

[*] Former Justice specially assigned to the Superior Court.

("Complainant").[1]  The trial court aptly summarized the evidence presented at Appellant waiver trial as follows:

On April 9, 2022 in the city and county of Philadelphia, Appellant was driving on Wayne Avenue with his minor daughter, [Complainant], in his passenger seat.  While in the car, Appellant and Complainant engaged in a verbal argument over use of her cell phone.  Appellant pulled his car over to the road and exited his vehicle.  Appellant forcibly pulled Complainant from the passenger seat of the vehicle and threw her to the ground on a grassy hill next to the road.  Appellant pinned down Complainant and struck her in the head and upper body multiple times which caused injury.  Appellant then stood up, threw Complainant's bag out of his car, and drove away.  A bystander who witnessed the incident called emergency services to provide medical assistance to Complainant.  Appellant was arrested by the Philadelphia Police Department later that same day and charged with Aggravated Assault, Unlawful Restraint of Minor, Endangering Welfare of Children, Simple Assault, and Recklessly Endangering Another Person.

On November 17, 2023, Appellant waived his right to a jury trial and proceeded to a waiver trial before the Hon. Judge Tamika Washington.  The Commonwealth first called Tanya Muse, who witnessed the incident while stopped in her car at a red light on the corner of Wayne and Chelten Avenue. Muse testified that she observed Appellant driving a two-door Bentley in an erratic manner before pulling the vehicle over to the side of the road.  Muse testified that she observed Appellant exit his vehicle and walk over to the passenger side.  Muse then stated that she saw Appellant violently pull Complainant from the vehicle and throw her against a hill.  Muse testified that Appellant threw Complainant in a "strong" manner which worried her.  Muse then observed Appellant climb on top of the young woman to straddle her.  Muse testified that Appellant punched Complainant with a closed fist in the face and body repeatedly and in a very hard manner.  Muse testified further that the encounter lasted a few minutes and that she called the police as the encounter continued.  Muse noted that

_____

[1] On February 17, 2026, the Commonwealth filed a motion to seal the certified record, trial court opinion, and parties' briefs.  On April 1, 2026, this Court entered a *per curiam* order granting the motion to seal.

the traffic light changed and that she was "pretty close" to the incident. Muse stated that she recorded a video of Appellant hitting the young woman and recognized the video when asked to identify it. The Commonwealth published the video to the Court as exhibit "C-1". Following the viewing of exhibit "C-1," Muse testified that she saw Appellant punch Complainant at least seven or eight times. Muse stated that she then saw Appellant leave in his car. Muse walked up to Complainant and observed that she was bleeding from open cuts on her face and head. Muse also testified that it appeared that Complainant had braids pulled out of her head. Muse stated that Complainant was upset and crying. Muse stayed with the young woman until an ambulance later arrived. Muse testified that what she observed was upsetting and that it took her some time to call the police and begin recording on her cell phone because she was frazzled.

The Commonwealth next called Claire Shuster, a Philadelphia Fire Department paramedic, to testify. Shuster testified that she was working on April 9, 2022 when she was called to a scene at or around 5700 Wayne Avenue due to an assault.

\*\*\*

[Shuster] testified that Complainant was placed in a C-collar to stabilize her neck. Additionally, Shuster stated that Complainant had a scratch above her right eyebrow, swelling and contusions to her right forehead and eyebrow and missing hair on the right side of her head which also had contusions and swelling. Shuster testified that the young woman was transported to the hospital due to her injuries.

The Commonwealth then called Philadelphia Police Officer Dave Dohan to testify. Officer Dohan testified that he was on duty on April 9, 2022 when he was taken to the 5700 block of Wayne Avenue in the city and county of Philadelphia. Dohan testified that when he arrived at that location he observed Complainant with blood on her face and a cut on her head. The Commonwealth marked Officer Dohan's body-worn camera as exhibit "C-3" and published it to the Court. Exhibit "C-3" depicted Officer Dohan standing in the back of the medical unit with Complainant. Officer Dohan testified that the Complainant was cleaned up in comparison to when she was seen on Wayne Avenue. Following Officer Dohan's testimony, Commonwealth moved exhibits C-1, C-3 and C-4, the certified medical records for the Complainant into

- 3 -

evidence and rested. Defense counsel for Appellant then moved for a judgment of acquittal and argued that the incident was corporal punishment under Section 509 of the Pennsylvania Consolidated Statutes. This Court denied the motion for acquittal.

Defense counsel for Appellant called Appellant to testify. Appellant testified that Complainant was his fourteen-year-old daughter and that he picked her up from the comer of Germantown and Price after hearing about bad behavior she engaged in. Appellant testified that he was concerned about his daughter's conduct as he was driving.

\*\*\*

Appellant then testified that he observed Complainant texting with a young man. Appellant testified that he asked Complainant to put her phone away and she refused. Appellant testified that Complainant was upset because she was in trouble and had her day interrupted. Appellant testified that he attempted to grab Complainant's cell phone from her hand and she hit his arm. Appellant testified that Complainant then repeatedly struck him and so he pulled his car over to the side of the road. Appellant testified that he told Complainant to get out of his car and when she refused, he grabbed her and pulled her out. Appellant stated that Complainant continued to kick and spit at him so he threw her into a grass hill beside the road. Appellant testified that he then pinned Complainant down and smacked her in an attempt to subdue her. Appellant testified that he smacked Complainant four times. Appellant maintained that he never struck Complainant with a closed fist. After the incident concluded, Appellant stated that he threw Complainant's belongings out of his car and left. During cross-examination by the Commonwealth, Appellant testified that he did not punch his daughter because if he did, she would have broken bones. Additionally, Appellant testified that he never met Tanya Muse and asserted that she was lying about what occurred.

Trial Court Opinion (T.C.O.), 4/30/26, at 1-6 (citations omitted).

At the conclusion of the waiver trial, the trial court convicted Appellant on all counts. The trial court deferred sentencing for the preparation of a presentence investigation report.

- 4 -

At the beginning of the sentencing hearing that was held on July 18, 2024, defense counsel raised an oral motion for extraordinary relief, asserting that Complainant, who had not appeared at Appellant's trial, was now available to testify at sentencing that Appellant had only slapped her in the incident in question. The trial court denied the oral motion for extraordinary relief, which it characterized as a motion for a new trial.

The parties agreed that since Appellant's conviction for aggravated assault carried an offense gravity score of ten (10) and Appellant had a prior record score of a repeat felony offender (RFEL), the standard range sentence set forth by the sentencing guidelines was seventy-two (72) to eighty-four (84) months' imprisonment plus or minus twelve (12) months.

The prosecution recommended Appellant be given the recommended guideline sentence in light of the gravity of the offense, his failure to express remorse for his behavior, and his criminal record as a prior felony offender which included violent crimes. Notes of Testimony (N.T.), 7/18/24, at 4-7.

Defense counsel requested a sentence of eleven and a half (11½) to twenty-three (23) months' imprisonment to be followed by six years' probation. Although defense counsel acknowledged Appellant had a prior record, he highlighted that Appellant had turned around his life since his last conviction in 2007, for which he took full responsibility. *Id.* at 9-11. Defense counsel emphasized that Appellant had been steadily employed for the Southeastern Pennsylvania Transit Authority ("SEPTA") and had provided a significant amount of financial support to Complainant and her mother. *Id.*

The defense also presented the testimony of Complainant, who asserted that she believed Appellant was a good father in spite of his behavior in this case which she characterized as a mistake in which Appellant "snapped." *Id.* at 13. She testified that Appellant took care of her and her mother, had changed since this incident by controlling his anger, and had apologized to her. Complainant indicated that she did not want Appellant to go to jail. *Id.*

At the sentencing hearing, Appellant apologized to his daughter, his family, and the trial court. *Id.* at 16-17. Appellant explained that this experience made him rethink his approach to parenting which was different from how he was raised. *Id.* Appellant also stated "I never put my hands on my daughter. Ever. Ever." *Id.*

At the conclusion of the sentencing hearing, the trial court imposed three (3) to six (6) years' imprisonment for the aggravated assault conviction, as well as terms of three years' probation on the unlawful restraint conviction and EWOC conviction. The trial court set the probationary terms to run consecutively to the prison term, but concurrently to each other. The trial court indicated that Appellant's simple assault and REAP convictions merged with the aggravated assault conviction for sentencing. Appellant filed post-sentence motions that were denied by operation of law. This appeal followed.

Appellant raises the following issues for our review on appeal:

1. Was the evidence insufficient to prove aggravated assault?
2. Was the evidence insufficient to prove unlawful restraint?

3. Whether the evidence was insufficient to prove endangering welfare of children?

4. Was the evidence insufficient to prove recklessly endangering another person?

5. Did the trial court err in rejecting [Appellant's] corporal punishment defense?

6. Did the trial court abuse its discretion when it imposed an unreasonable sentence?

Appellant's Brief, at 4.

Appellant first challenges the sufficiency of the evidence supporting his aggravated assault conviction. In reviewing a challenge to the sufficiency of the evidence, our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Youngster**, 352 A.3d 1052, 1058–59 (Pa. Super. 2026).

> To assess the sufficiency of evidence offered to establish guilt, we consider whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.
>
> Evidence may be entirely circumstantial so long as it links the accused to the crime beyond a reasonable doubt.

*Id*. at 1058-59 (quoting ***Commonwealth v. Wunderlich***, 332 A.3d 112, 115-16 (Pa. Super. 2025) (citations and quotation marks omitted)).

Appellant was convicted of aggravated assault under Section 2702(a)(1) of the Crimes Code which requires proof that a defendant "attempt[ed] to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Further, the Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "To sustain a conviction for aggravated assault, the Commonwealth need not show that serious bodily injury actually occurred, but only that the defendant attempted to cause serious bodily injury to another person." ***Commonwealth v. Rosario***, 307 A.3d 759, 765 (Pa.Super. 2023) (citation omitted).

Appellant argues the Commonwealth failed to present sufficient evidence that 1) the Complainant sustained serious bodily injury or that 2) Appellant attempted to cause Complainant serious bodily injury. We note that neither the trial court found nor do the parties contend that the Complainant suffered serious bodily injury. Thus, we will focus on whether the Commonwealth met its burden to show Appellant attempted to cause Complainant serious bodily injury.

> "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. ***Commonwealth v. Matthew***, 589 Pa. 487, 909 A.2d 1254 (2006). "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" *Id.* at 1257–58 (quotation omitted). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." *Id.* (citation omitted). The intent to cause serious bodily injury may be proven by direct or circumstantial evidence. ***Id.***

***Commonwealth v. Fortune***, 68 A.3d 980, 985 (Pa. Super. 2013) (*en banc*) (quoting ***Commonwealth v. Martuscelli***, 54 A.3d 940, 948 (Pa. Super. 2012) (emphasis added)).

"[A] determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis." ***Commonwealth v. Dailey***, 828 A.2d 356, 360 (Pa. Super. 2003); ***see also id.*** (observing that, "depending on the other circumstances, even a single punch may be sufficient").

> When considering whether a defendant acted with specific intent to cause serious bodily injury if such injury does not occur, our Supreme Court has considered the following circumstances: whether the defendant is "disproportionally larger or stronger than the victim;" whether the defendant had to be "restrained from escalating his attack upon the victim;" whether the defendant had a "weapon or other implement to aid his attack;" and whether the defendant made any statements "which might indicate his intent to inflict further injury upon the victim."

***Commonwealth v. Sinkiewicz***, 293 A.3d 681, 688 (Pa. Super. 2023) (citing ***Commonwealth v. Alexander***, 477 Pa. 190, 383 A.2d 887, 889 (1978)).

In **Dailey**, this Court upheld the appellant's aggravated assault conviction, finding the trial court was justified in finding the appellant attempted to cause serious bodily injury to the victim, when he delivered at least two closed-fist punches to the victim's head, moved towards the victim to deliver another punch, and had to be restrained while positioned to continue the attack. **Dailey**, 828 A.2d at 360-61. **See also Commonwealth v. Pandolfo**, 446 A.2d 939, 941 (Pa.Super. 1982) (finding evidence sufficient to sustain conviction for aggravated assault given "the repeated blows to a portion of the body as vital as the head exhibited an intent to inflict serious bodily injury").

In considering the evidence in the light most favorable to the Commonwealth, we agree with the trial court's finding that there was sufficient evidence to show Appellant acted with intent to cause serious bodily injury. Eyewitness Tanya Muse observed Appellant pull Complainant out of his car, throw her down, straddle her, punch her with a closed fist at least seven or eight times in the face and body, and leave her on the side of the road. When Muse approached on foot to render Complainant aid, she saw Complainant had sustained bleeding cuts on her head and some of Complainant's braids had been pulled out. Muse indicated that Complainant was crying inconsolably and screaming after the attack and had a scared demeanor.

The trial court also noted that Muse's testimony was corroborated by the cell phone video Muse recorded of the end of the attack. The responding Philadelphia Fire Department paramedic Claire Shuster and Philadelphia Police

Officer Dave Dohan confirmed that Complainant had multiple injuries to her head and face, including swollen areas, bleeding lacerations, and portions of missing hair. Shuster also reported that Complainant reported neck pain. Shuster felt that it was necessary to transport Complainant to a hospital to further assess her injuries.

Further, it was undisputed that Appellant was disproportionally larger and stronger than Complainant; Appellant was over six feet tall and weighed over 200 pounds while Complainant (who was fourteen at the time) was reported to be approximately five feet tall. This difference in size and strength was also highly relevant in determining that Appellant acted with specific intent to cause serious bodily injury.

Based on all of these factors, the evidence presented at trial supports the trial court's finding that Appellant's behavior demonstrated his intent to cause Complainant serious bodily injury. As a result, we conclude the trial court did not err in finding Appellant guilty of aggravated assault.

Appellant's challenges to the sufficiency of the evidence supporting his convictions for unlawful restraint, REAP, and EWOC fail on the same reasoning. An individual commits unlawful restraint if he "knowingly restrains another unlawfully in circumstances exposing him to the risk of serious bodily injury." 18 Pa.C.S.A. § 2902. An individual may be convicted of REAP if "he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. A conviction for EWOC

will be graded as a third degree felony if the actor "created a substantial risk of death or serious bodily injury." 18 Pa.C.S.A. § 4303(b)(iii).

Appellant challenged these convictions based on the same argument that he did not cause or intend to cause Complainant serious bodily injury, a claim which we have dismissed above. The statutory language for these three crimes only requires that a defendant place a victim in danger of serious bodily injury or creates a substantial risk of serious bodily injury. Similarly, we find that Appellant's repeated closed-fist blows to Complainant's head created a substantial risk that Complainant would sustain serious bodily injury. Thus, we find no merit to Appellant's sufficiency challenges.

Appellant also argues that even if the elements of each crime were "technically satisfied," the trial court improperly rejected his justification defense that he was merely disciplining his daughter with reasonable force. Appellant cites 18 Pa.C.S.A. § 509, which provides:

**§ 509. Use of force by persons with special responsibility for care, discipline or safety of others**

The use of force upon or toward the person of another is justifiable if:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious

> bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

18 Pa.C.S.A. § 509.

Appellant, the father of the minor Complainant, testified that he used reasonable force to punish Complainant for her misconduct. Appellant gave uncontradicted testimony that after he and Complainant engaged in a verbal argument about her misconduct and he took her phone, Complainant became physically aggressive with him while he was driving, grabbed his arm and attempted to retrieve her phone. Appellant asserts that his conduct in removing Complainant from his vehicle and physically striking her was "not an arbitrary act of violence, but a direct disciplinary response to a teenager endangering the operation of a moving vehicle and striking her father." Appellant's Brief, at 16. Appellant maintains that he did not punch Complainant, but smacked her to subdue her.

Further, Appellant argues that the medical evidence shows that Complainant only received minor injuries, consistent with corporal punishment. While Appellant admits he has a significant size disparity over Complainant, he asserted that the disparity in size proved he exercised restraint, and did not intend to cause Complainant serious bodily injury.

We agree with the trial court's assessment that Appellant's behavior was not justifiable as corporal punishment. While Appellant continues to assert that he only slapped Complainant, the trial court found this assertion to be inaccurate as Ms. Muse testified that she observed Appellant repeatedly punching Complainant's head with a closed fist in a hard manner at least seven

or eight times. The video of the incident shows the end of the altercation in which Appellant struck Complainant. Emergency personnel confirmed that Complainant exhibited multiple injuries to her head including swelling, contusions, lacerations, and missing portions of her hair. Due to the extent of her injuries, the emergency personnel determined that it was warranted to transport Complainant to the hospital to assess her injuries more closely.

Viewing the record, we conclude that there was sufficient evidence for the trial court to conclude that Appellant's behavior in repeatedly punching her in the head and ripping her hair out constituted force "known to create a substantial risk of causing … serious bodily injury, …, extreme pain or mental distress[.]" Thus, the trial court did not err in finding Appellant was not entitled to the justification defense of corporal punishment.

Appellant also claims the trial court abused its discretion in the sentencing process and in imposing an unreasonable sentence. Appellant raises five specific challenges to the sentencing process, which we address separately.

First, Appellant claims the trial court improperly barred Complainant from testifying at sentencing about the incident itself and limited her to speaking about generalized mitigation facts. However, we find this issue is waived as Appellant failed to make a specific objection at trial to raise this argument before the trial court. Issues not raised to the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). To properly preserve an issue for review, a party must make a timely and specific

objection." ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa.Super. 2003) (citation omitted).

As noted above, Complainant did not testify at trial. However, at the beginning of the sentencing hearing, defense counsel made an oral "motion for extraordinary relief," arguing that Complainant was now ready to testify as to what happened to her during the altercation. The trial court denied the motion, which it characterized as a motion for a new trial, given that Appellant had already been found guilty and the Complainant was not permitted to present new evidence as to Appellant's guilt at sentencing. The trial court added that "[a]ll you can present is Appellant's ability to be rehabilitated." N.T., 7/18/24, at 7-8. Defense counsel replied, "Understood." ***Id.***

Appellant did not challenge the trial court's finding that the defense was only offering Complainant's testimony to attempt to overturn his convictions. Defense counsel made no attempt to argue that Complainant's testimony about the incident was relevant to the sentencing process. Instead, Appellant asserts for the first time on appeal that the trial court should have considered Complainant's testimony as to her perspective on the assault to assess the seriousness of the offense. As Appellant did not preserve this particular challenge for appellate review, we decline to review it further.

Appellant also challenges the trial court's decision to reject the defense's request to have Analeisha Cooper testify at sentencing as to the change in Appellant's behavior after being charged in connection with these offenses. Appellant argues that the trial court's refusal to hear Ms. Cooper's testimony

showed its unwillingness to consider mitigation evidence bearing on Appellant's rehabilitative needs.

We review a trial court's decision to exclude testimony to determine whether the trial court abused its discretion. *Commonwealth v. Nabried*, 327 A.3d 315, 321 (Pa. Super. 2024). The trial court abuses its discretion only if it misapplies the law, or its exercise of judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. *Id.* (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Yockey*, 158 A.3d 1246, 1254 (Pa. Super. 2017) (citation omitted).

The trial court excluded Ms. Cooper's testimony on the basis that it was cumulative of the testimony of Complainant, who had already offered testimony on Appellant's changed behavior. The trial court may exclude evidence which is merely cumulative of other evidence. *Commonwealth v. Smith*, 548 Pa. 65, 75, 694 A.2d 1086, 1091 (1997). We also note that Appellant has not shown how the exclusion of Ms. Cooper's testimony resulted in prejudice, as the trial court imposed a sentence well below the recommended guideline sentence, as discussed *infra*. As such, we will not disturb the trial court's discretion in excluding Ms. Cooper's testimony.

Appellant also challenges the trial court's discretion in imposing his sentence which he characterized as unreasonable. Appellant claims the trial court failed to meaningfully balance the relevant sentencing factors in 42

Pa.C.S.A. § 9721, but instead exaggerated the seriousness of his conduct and questioned Appellant's assertions of remorse.

In reviewing a challenge to the trial court's sentencing discretion, we are mindful that:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks, some citations, and emphasis omitted).

Appellant filed a timely notice of appeal after preserving these issues in a timely post-sentence motion. His appellate brief includes a statement of reasons for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Pa.R.A.P. 2119(f). Therefore, we must determine whether Appellant's challenge to the discretionary aspects of his sentence constitutes a substantial question for our review. "[T]o establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis."

*Commonwealth v. Bonner*, 135 A.3d 592, 603 (Pa. Super. 2016) (citations omitted).

This Court has held that "an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question ... [and] an allegation that the court considered an impermissible sentencing factor raises a substantial question." *Commonwealth v. Derrickson*, 242 A.3d 667, 680 (Pa. Super. 2020) (quoting *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009)).

Our standard of review for a challenge to the discretionary aspects of sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, 323 A.3d 26, 30–31 (Pa. Super. 2024) (quoting *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted)).

A sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Torres*, 303 A.3d 1058, 1065

(Pa. Super. 2023) (quoting **Commonwealth v. Walls**, 592 Pa. 557, 926 A.2d 957, 961 (2007) (citation omitted)).

The Sentencing Code requires a sentencing court to "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721. "The balancing of the sentencing factors is the sole province of the sentencing court." **Commonwealth v. Miller**, 275 A.3d 530, 535 (Pa. Super. 2022) (citation omitted).

We reject Appellant's suggestion that the trial court did not "meaningfully balance" the relevant sentencing factors set forth in Section 9721. Although the trial court expressed empathy for the difficulty in parenting teenagers and acknowledged that Appellant had been faced with a disciplinary situation with his daughter, the trial court found that Appellant's assault "went far, far beyond any form of discipline." N.T., 7/18/24, 18. The trial court did emphasize the gravity of the offense and characterized Appellant's attack on Complainant as a "bar brawl." While the trial court was obviously disturbed by Appellant's conduct that led to his conviction, such comments were not a mischaracterization of the events that occurred.

We are not persuaded by Appellant's claim that the trial court penalized him for attempting to present Complainant's testimony to support his claim that he only slapped Complainant during the altercation. The trial court simply

questioned Appellant's claims of remorse given that he continued to maintain that he only slapped Complainant in light of the eyewitness testimony reporting that he had repeatedly punching Complainant as well as the corroborating video recording of the assault. **See Torres**, **supra** (finding trial court is in the best position to evaluate a defendant's claim of remorse).

Moreover, the trial court expressly pointed out that there was mitigating evidence in the record, highlighting that Complainant had expressed love for Appellant and testified that Appellant had attempted to make amends with her and has tried to be a better parent. Further, the trial court indicated that it had considered the PSI report prepared in advance of the sentencing hearing. "Where [PSI] reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Watson**, 228 A.3d 928, 936 (Pa.Super. 2020) (quoting **Commonwealth v. Devers**, 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988)).

We further emphasize that the trial court imposed a sentence that was well below the recommended guidelines range and expressly indicated that it had done so due to the mitigating evidence presented at sentencing. The record shows that the trial court considered all of the relevant sentencing factors and imposed a reasonable sentence that was not based on any improper factor. Thus, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence.

As a final matter, we recognize that the Commonwealth candidly noted a discrepancy in the trial court's sentencing order that requires correction. At the sentencing hearing, the trial court stated that Appellant's simple assault and REAP convictions would merge with his aggravated assault conviction for the purpose of sentencing. N.T. 7/18/24, at 26. However, the sentencing order deviated from what was announced at the sentencing hearing as the order imposes a separate three-year probationary sentence for Appellant's simple assault conviction.

In similar circumstances, this Court has held that if a trial clearly and unambiguously sets forth a punishment on the record at the sentencing hearing, but the subsequently-issued sentencing order is incompatible with the trial court's expressed intention, the sentence imposed in open court controls and the written sentencing order is subject to later correction to rectify a clear clerical error on the face of the record. *Commonwealth v. Bartic*, 303 A.3d 124, 129 n.2 (Pa. Super. 2023) (citing *Commonwealth v. Borrin*, 12 A.3d 466, 473 (Pa. Super. 2011).

In this case, the trial court clearly and unambiguously stated that Appellant's conviction for simple assault would merge with the aggravated assault conviction for the purpose of sentencing. The trial court did not impose any punishment on the simple assault conviction. As such, the trial court's subsequent written sentencing order which imposed a separate concurrent sentence on the simple assault charge, was incompatible with the trial court's stated intentions at the sentencing hearing and constituted a clear clerical

error that is subject to correction. We may remand to correct this clerical error without subjecting Appellant to resentencing.

Judgment of sentence affirmed. Remand for the trial court to correct the sentence as discussed in this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2026